# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CHAD JAMES ADAMS, )
)
      Plaintiff, )
)
v. ) Case No. CIV-18-150-JHP-SPS
)
ANDREW M. SAUL, )
Commissioner of the Social )
Security Administration,[1] )
)
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Chad James Adams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-four years old at the time of the most recent administrative hearing (Tr. 34, 52). He completed eleventh grade and has no past relevant work (Tr. 44, 233). The claimant alleges that he has been unable to work since December 15, 2013, due to heat stroke, acute kidney failure, tremors, dissociative disorder, high blood pressure, panic attacks, reflux, and depression (Tr. 232).

## Procedural History

On March 18, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 15, 201-07). His application was denied. ALJ Kenton W. Fulton held an administrative hearing and a supplemental hearing, and determined that the claimant was not disabled in a written opinion dated May 2, 2017 (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform work at all exertional levels, but must avoid exposure to dust, odors, fumes, and pulmonary irritants; could perform simple and detailed tasks and instructions; could have no public interaction; and

could have no more than occasional interaction with coworkers and supervisors (Tr. 20). The ALJ then concluded that the claimant was not disabled because there was work that he could perform in the national economy, *e. g.*, dining room attendant, dishwasher, and floor maintenance worker (Tr. 24-25).

**Review**

The claimant contends that the ALJ failed to properly evaluate the opinion of consultative psychological examiner Julie S. Wallace, Ph.D., which in turn, caused errors at step five with respect to the jobs the vocational expert identified. The undersigned Magistrate Judge finds these contentions do not have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of anxiety disorders, depression, borderline intellectual functioning, and asthma; the nonsevere impairments of hypertension and alcohol, marijuana, and methamphetamine dependence; and that his alleged gastroparesis was not medically determinable (Tr. 17-18). The medical evidence relevant to the claimant's mental impairments reflects that Dr. Erica Sun regularly treated the claimant for depression and anxiety between February 2012 and June 2013 and sporadically thereafter until January 2017 (Tr. 514-71, 707-09, 721-23, 935-36, 945-46, 970-71). Dr. Sun consistently noted the claimant's mood was euthymic and his affect was congruent (Tr. 514-71, 707-09, 935-36, 945-46, 970-71). At a follow-up appointment in June 2013, the claimant indicated that his depression and anxiety were under good control (Tr. 571). On September 24, 2014, the claimant presented to Dr. Sun for follow-up after seeking emergent care for suicidal ideations and domestic violence (Tr. 722). She noted

the claimant's mood was tearful and dysphoric and his affect was congruent (Tr. 722-23). At a follow-up appointment in June 2016, the claimant rated his mood and anxiety at eight (with ten being the best) and indicated that his medication helped him "be more social and get out more" (Tr. 935). Dr. Sun's mental status examination was normal (Tr. 935). On January 10, 2017, the claimant reported that he stopped taking his anti-depressant medication due to side effects and was unmotivated, did not want to get out of the house, and was always in bed sleeping (Tr. 970). Dr. Sun's mental status examination was normal, and she prescribed a different anti-depressant (Tr. 970-71).

In addition to medication management, the claimant's treatment for depression and anxiety also consisted of counseling. Randi Skender, a licensed clinical social worker, regularly conducted counseling sessions with the claimant in 2012 (Tr. 516-58). The claimant consistently reported that he was doing well, and Mr. Skender's mental status examinations were consistently normal (Tr. 516-58).

On May 9, 2016, Dr. Wallace conducted a consultative psychological examination of the claimant (Tr. 888-97). Dr. Wallace observed that the claimant appeared to be in a relatively good mood, had an appropriate and content consistent affect, and maintained attention and concentration throughout the interview (Tr. 890). She administered the Wechsler Adult Intelligence Scale IV, which produced a Full Scale Intelligence Quotient ("FSIQ") of 79, placing the claimant within the borderline range of intellectual functioning (Tr. 891). His verbal comprehension and perceptual reasoning abilities were both in the low average range (Tr. 892). His ability to sustain attention, concentrate, exert mental control, and process simple or routine visual material without making errors were also in

the low average range (Tr. 892-93). Dr. Wallace indicated it was "likely that Mr. Adams will need some extra instructions at times or additional time to complete complicated tasks. He will do better in jobs where he has less complex and more repetitive duties." (Tr. 893).

On May 11, 2016, Dr. Wallace completed a Medical Source Statement ("MSS") wherein she opined that the claimant had no limitation in his ability to understand and remember simple instructions, but was mildly limited in his ability to carry out simple instructions and to make judgments on simple work-related decisions (Tr. 898). She found the claimant was moderately limited in his ability to understand, remember, and carry out complex instructions, but markedly limited in his ability to make judgments on complex work-related decisions (Tr. 898). Dr. Wallace also opined that the claimant was mildly limited in his ability to interact appropriately with supervisors, coworkers, and the public (Tr. 899).

State agency psychologist "RC, Ph.D." completed a Psychiatric Review Technique form on June 11, 2014, and found that the claimant's mental impairments were nonsevere (Tr. 89-91). Dr. RC's findings were affirmed on review (Tr. 101-03).

At the supplemental hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform (Tr. 44-45). As part of the questioning, the ALJ posed a hypothetical that included the following nonexertional limitations: (i) avoid dust, odors, fumes, and pulmonary irritants; (ii) simple and detailed instructions; (iii) no public interaction; and (iv) no more than occasional interaction with coworkers and supervisors (Tr. 44). The VE identified three medium, unskilled jobs such a person could perform: (i) dining room attendant, DICOT § 311.677-018; (ii) dishwasher,

DICOT § 318.687-010; and (iii) maintenance worker, DICOT § 381.687-018 (Tr. 45). The VE further indicated that the information she provided was not in conflict with the DOT (Tr. 45).

In his written decision, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. The ALJ gave great weight to Dr. Wallace's opinion, but further limited the claimant to no public interaction based on his subjective complaints (Tr. 23). The ALJ gave little weight to the state agency psychologists' opinions that the claimant had no severe mental impairments, finding they were inconsistent with the medical evidence and with Dr. Wallace's diagnoses and findings (Tr. 23). The ALJ included all the limitations from the above-described hypothetical in the RFC (Tr. 20). He then adopted the VE's testimony that the claimant could perform the medium, unskilled jobs of dining room attendant, dishwasher, and floor maintenance worker (Tr. 24-25).

The claimant contends that the ALJ improperly adopted some, but not all of Dr. Wallace's findings, relying on *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), for support. *See Haga*, 482 F.3d at 1208 ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . ."). Specifically, the claimant contends the ALJ rejected Dr. Wallace's limitations regarding complicated tasks by including detailed tasks and instructions in the RFC. In essence, he argues that Dr. Wallace's opinion limits him to simple or unskilled work, but this is not borne out in the opinion. Dr. Wallace's opinion states the claimant would "likely . . . need

-7-

some extra instructions at times or additional time to complete complicated tasks . . . [and] will do better in jobs where he has less complex and more repetitive duties," not that he was unable to perform complicated tasks at all. Similarly, the ALJ's RFC does not permit complex work, but allows for more than simple tasks and instructions (Tr. 893). Thus, both Dr. Wallace's opinion and the ALJ's RFC limit the claimant to semi-skilled work. *See* 20 C.F.R. § 416.968(b) (defining semi-skilled work as "work which needs some skills but does not require doing the more complex work duties"). Furthermore, even if the ALJ did err in his analysis of Dr. Wallace's opinion, such error is harmless here because the identified jobs are not contrary to her opinion as to the completion of complex tasks since they are all unskilled. *See* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (stating that unskilled work generally requires the ability to understand, remember, and carry out simple instructions); *accord* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); 20 C.F.R. § 416.968(a) (defining unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

The claimant further asserts that the ALJ erred in identifying jobs he could perform because there was a conflict between the VE's testimony and the DOT. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict regarding the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The jobs of dining room attendant, dishwasher, and floor maintenance worker all have reasoning levels of two. *See* DICOT §§ 311.677-018, 318.687-010, 381.687-018. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id*. The claimant asserts that this reasoning level is incompatible with simple work. The undersigned Magistrate Judge agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, and that other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4

(W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," and "[t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

In sum, the ALJ analyzed the claimant's RFC, posed proper hypothetical questions incorporating the RFC to the VE, determined that the VE's testimony was consistent with the DOT, and thus properly relied on that testimony to determine that the claimant could perform work and was accordingly not disabled. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) (noting that an ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions "included all the limitations the ALJ ultimately included in his RFC assessment."), *citing Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993). Consequently, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**